**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. ROGER BLACKWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 09-661 (RMC) |
| ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Dr. Roger Blackwell, a former college professor who is incarcerated pursuant to his conviction for various insider trading violations, alleges that he did not commit the crimes for which he was convicted and that the prosecutor withheld exculpatory material and engaged in misconduct. *See* Pl.'s Cross Mot. for Summ. J. [Dkt. #9] ("Pl.'s Mot.") at 6. These allegations are not germane to the claim Dr. Blackwell presents in this case — a claim against the Federal Bureau of Investigation (FBI)[1] and the Department of Justice seeking records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Dr. Blackwell seeks records relating to the criminal case against him, *United States v. Blackwell*, Crim. No. 02-04-134 (S.D. Ohio). The parties filed cross motions for summary judgment.[2] Because the FBI conducted an

---

[1] Because the FBI is a component of the Department of Justice ("DOJ") and it is the DOJ that is an agency covered by FOIA, DOJ is the proper party defendant in this case. *See* 5 U.S.C. § 552(f)(1).

[2] In addition to filing cross motions, responses, and replies, Dr. Blackwell moved to file a Surreply. *See* Pl.'s Mot. to File Surreply [Dkt. #24]. Although the Surreply largely repeats arguments that Dr. Blackwell asserted in other pleadings, the Court will grant the motion to file the Surreply.

adequate search for records, various exemptions apply, and the FBI produced an adequate *Vaughn*[3]
index, the FBI's motion for summary judgment will be granted and Dr. Blackwell's cross motion
will be denied.

## I. FACTS

Prior to Dr. Blackwell's conviction, he was a Professor of Marketing at Ohio State
University. Defs.' Mot. for Summ. J. [Dkt. # 5] ("Defs.' Mot."), Ex. C (Aug. 27, 2007 letter from
Dr. Blackwell's attorney) at 3. He has received many awards and written many books, including a
textbook on consumer behavior. Due to his work in the field of marketing, he also served as a board
member for fifteen companies. In 1999, Dr. Blackwell was a member of the board of Worthington
Foods. In July of that year, Kellogg Corporation began purchase discussions with Worthington. Dr.
Blackwell was a party to these discussions. Worthington accepted Kellogg's offer, and the sale was
announced on October 1, 1999. *Id*.

The National Association of Securities Dealers ("NASD") discovered that the volume
and price of Worthington stock increased significantly in the weeks before the announcement was
made, and passed this information to the SEC. The SEC, via the FBI, conducted an investigation,
discovering that between July and October 1999, several of Dr. Blackwell's friends and family
members bought stock in Worthington. *United States v. Blackwell*, 459 F.3d 739, 749 (6th Cir.
2006).

In 2002, Dr. Blackwell's wife, Tina Stephan Blackwell, and his in-laws, Alfred and
Gertrude Stephan, testified before the SEC. They denied that Dr. Blackwell had given them any
insider information before the buyout. *Id*. The following year, Dr. Blackwell began to have marital

---

[3] *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

difficulties, and Tina Stephan Blackwell worked out an immunity agreement with the prosecutor, by which Tina Stephan Blackwell and her parents would receive immunity from prosecution in exchange for Tina Stephan Blackwell's admission to conspiracy, perjury, and insider trading and her testimony against Dr. Blackwell.  *Id.*  Dr. Blackwell's close business associate, Jack Kahl, also agreed to testify against Dr. Blackwell in exchange for immunity.  *Id.*  As a result of the investigation, Dr. Blackwell was charged with insider trading for tipping close associates and family members about the buyout and for insider trading by Dr. Blackwell's companies, Blackwell Associates and Blackjack.  Defs.' Mot., Ex. C at 3-4; *id.*, Ex. S.  Dr. Blackwell contended then, and contends now, that he promoted the purchase of Worthington stock because he believed in its value, but that he did not disclose the buyout.  *Blackwell*, 459 F.3d at 749; Defs.' Mot., Ex. C at 3-4.

On June 20, 2005, Dr. Blackwell was convicted of the following charges:  one count of conspiracy to commit insider trading, 18 U.S.C. § 371; one count of conspiracy to obstruct an agency proceeding, *id.*; fourteen counts of insider trading, 15 U.S.C. §§ 78j and 78ff; one count of obstructing an agency proceeding, 18 U.S.C. § 1505; and two counts of making false statements in a federal matter, *id.* § 1001.  *Blackwell*, 459 F.3d at 751.  He was sentenced to 72 months in prison and fined $1,000,000.  *Id.*  Dr. Blackwell is currently incarcerated in the Federal Correctional Institute at Morgantown, West Virginia.

On April 19, 2007, counsel for Dr. Blackwell sent a letter to FBI Headquarters requesting records relating to the prosecution of Dr. Blackwell, including records relating to statements made by Tina Stephan Blackwell, Alfred and Gertrude Stephan, and Jack Kahl.  Specifically, Dr. Blackwell requested the following records:

1.  All records pertaining in any way to Alfred Stephan, Gertrude

Stephan, and Tina Stephan Blackwell related to [*United States v. Blackwell*, No. CR 02-04-134 (S.D. Ohio)] including . . . :

(a) any and all immunity agreements or proposed immunity agreements entered into or presented to any of these persons or their representatives;

(b) any and all interviews relating to Alfred Stephan, Gertrude Stephan, and Tina Stephan Blackwell including any and all correspondence, notes, transcripts, statements, memoranda, reports, recordings, videotapes, emails, faxes, telephone messages, jottings, or any other form of record or communication pertaining thereto;

(c) all correspondence, notes, telephone messages, memoranda, tape recordings, reports or other form of records prior to the end of the trial (June 20, 2005) with or regarding Alfred Stephan, Gertrude Stephan, and Tina Stephan;

2. All notes, memoranda, reports, correspondence, transcripts, statements, tape recordings, communications or any other form of record pertaining to John ("Jack") Kahl.

3. All records at any of these specified locations which reflect the costs incurred in undertaking the referenced investigation and prosecution, including any breakdowns of said costs.

4. Any and all records related in any way to any proposed settlement agreement, whether oral or written, which was in any form communicated to Dr. Blackwell's attorneys.

5. All search slips or other records reflecting the nature of the search conducted.

Please search the following locations for these records: (1) the Cincinnati, Ohio field office, (2) the Columbus, Ohio residency, and (3) FBI Headquarters. Please search both main files and cross-references at these locations for any responsive materials. Please also search your ELSUR indices at these locations. Your ELSUR search should include not only references [to] the subjects of this request . . . , but any "mentions" or "overhears" as well. Finally, please also search under all logical name variations (all "buildups and breakdowns") as well as under any known aliases or nicknames.

Defs.' Mot., Ex. A.

On September 25, 2007, FBI Headquarters notified Dr. Blackwell that it had not located any records responsive to his request in the Central Records System at Headquarters and directed Dr. Blackwell to make his request directly to the FBI field office in Cincinnati, Ohio.  *Id.*, Ex. E.  Counsel for Dr. Blackwell then sent his FOIA/Privacy Act request to the Cincinnati field office.  *See id.*, Ex. F.  The FBI located one file from the Cincinnati field office containing 3,319 pages that were potentially responsive to Dr. Blackwell's request.  In order to expedite the processing of the request, Dr. Blackwell reduced the scope of his request to include only the following records: "All FD 302s and notes of interviews on [sic] Alfred Stephens, Gertrude Stephens, and Tina Stephens."  *Id.*, Exs. M & N.

The FBI reviewed 1,877 pages of records responsive to Dr. Blackwell's reduced request.  It released 1,103 pages in full, 557 pages in part, and 209 pages were withheld entirely.  *Id.*, Ex. O.  On June 5, 2009, counsel for Dr. Blackwell selected 198 pages to be included in the FBI's *Vaughn* declaration.  *Id.*, Ex. R.  The FBI reprocessed these pages releasing 3 pages in full and 159 in part; it withheld 36 pages in their entirety.  *See id.*, Ex. S (copies of the pages released in whole or in part).  The FBI asserts the following exemptions to disclosure:  Privacy Act (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Dr. Blackwell opposes and moves for summary judgment in his favor.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  FOIA cases are typically and appropriately decided on motions for summary judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13  (D.D.C. 1980).

## III.  ANALYSIS

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b).  To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records.  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).  Even though FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted).  The defendant in a FOIA case must show that the search for responsive documents was adequate, any exemptions claimed actually apply, and reasonably segregable non-exempt information has been disclosed after deletion of exempt

information.  *See Pub. Employees for Envtl. Responsibility v. Dep't of Interior*, Civ. No.  06-182,

2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006).

To establish that an adequate search was conducted, proper exemptions were claimed,

and reasonably segregable records were released, agencies regularly submit an affidavit in support

of their motions for summary judgment.  *Judicial Watch v. Dep't of Health and Human Servs.*, 27

F. Supp. 2d 240, 242 (D.D.C. 2002).   Such an affidavit is often accompanied by or includes a

*Vaughn* index.   The D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820, requires agencies to

prepare an itemized index correlating each withheld document, or portion thereof, with a specific

FOIA exemption and the agency's nondisclosure justification.   The materials can be presented in any

form so long as they provide the court a reasonable basis to evaluate the exemption claims.  *Delaney,*

*Midgail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987).

Agency affidavits are deemed sufficient if they show, with reasonable specificity, why

the documents or redactions fall within an exemption.   *Hayden v. Nat'l Security Agency*, 608 F.2d

1381, 1387 (D.C. Cir. 1979).   A court may award summary judgment solely on the basis of

information provided by agency declarations if the declarations describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981).

Here, the FBI presents the declaration of David M. Hardy, Section Chief of the FBI

Record/Information Dissemination Section, Records Management Division, in support of its motion

for summary judgment.  *See* Defs.' Mot, Hardy Decl. [Dkt. # 5-2].  The Hardy Declaration explains

that the FBI reviewed 1,877 pages of records responsive to Dr. Blackwell's request, releasing 1,103 pages in full and 557 pages in part; 209 pages were withheld.  Hardy Decl. ¶ 20; Defs.' Mot., Ex. O. Because of the large number of documents at issue, the parties determined that a sampling procedure should be used.  *See Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986) (sampling is appropriate when a large number of documents is identified as responsive to a FOIA request). "Upon examining the sample, a court is then able to extrapolate its conclusions from the representative sample to the larger group of withheld materials."  *Id*.  Thus, Dr. Blackwell selected 198 pages as a sample to "test" the decisions to withhold materials.  Defs.' Mot., Ex. R.  The FBI reprocessed these pages, releasing 3 pages in full and 159 in part, and withholding 36 pages.  Hardy Decl. ¶ 38; Defs.' Mot., Ex. S.  The FBI asserts the following exemptions to disclosure:  Privacy Act (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Hardy Decl. ¶ 38.

### A.  Adequacy of the Search

Dr. Blackwell contends that the FBI did not conduct an adequate search for documents.  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive documents may exist, but whether the search itself was adequate.  *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents."  *Id.*  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess

the requested information.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Once an

agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate the

lack of a good faith search.  *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

        An agency may prove the reasonableness of its search via the declaration of

responsible agency officials, so long as the declaration is reasonably detailed and not controverted

by contrary evidence or evidence of bad faith.  *Military Audit Project*, 656 F.2d at 738.  An agency's

declarations are accorded "a presumption of good faith, which cannot be rebutted by purely

speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v.

SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted).

        The Hardy Declaration indicates that the FBI conducted a good faith, reasonable

search of those systems of records likely to possess the requested information.  The FBI first

searched the Central Records System ("CRS").  Hardy Decl. ¶ 35.  CRS is the FBI's electronic

repository for information compiled for law enforcement purposes, and it contains all investigative

files regarding individuals of investigative interest to the FBI.  *Id*. ¶ 24.  Information regarding Dr.

Blackwell, the target of an FBI criminal investigation, reasonably would be found in the CRS.  CRS

is accessed through the Automated Case Support System ("ACS").  *Id*.  Via ACS, the FBI searched

for "Roger Dale Blackwell" and "Dr. Roger Blackwell" thereby creating "six-way phonetic" searches

of the following names: Roger D. Blackwell, R.D. Blackwell, R. Dale Blackwell, R.

Blackwell/Roger Blackwell, and D. Blackwell/Dale Blackwell.  Defs.' Resp. to Am. Reply [Dkt.

# 22], 2d Hardy Decl. [Dkt. # 22-1] ¶ 5.  This query identified a voluminous file.  Hardy Decl. ¶¶ 27-

29.

        The FBI also searched the Electronic Surveillance indices ("ELSUR").  *Id*. ¶ 35.

ELSUR indices are a system of records used to maintain information on a subject whose electronic and/or voice communications have been intercepted as a part of consensual or court-ordered electronic surveillance. *Id*. ¶ 30. ELSUR indices include persons who were the targets surveillance, the participants in monitored communications, and the owners, lessees, or licensors of the premises where the FBI conducted surveillance. *Id*. ¶ 31. Information regarding Dr. Blackwell and the investigation of his criminal conduct reasonably could be found in the ELSUR indices as well.

Because the FBI provided an adequate affidavit indicating a reasonable search for records, the burden shifts back to Dr. Blackwell to demonstrate a lack of a good faith search. *See Maynard*, 986 F.2d at 560. Dr. Blackwell has not met his burden. He has cited no contrary evidence, and he has not submitted any evidence of bad faith. Dr. Blackwell submits his own declaration in an attempt to rebut the Hardy Declaration. *See* Pl.'s Mot., Blackwell Decl. [Dkt. # 9-1]. The Blackwell Declaration presents numerous allegations asserting Dr. Blackwell's innocence of the crimes for which he was convicted and claiming that errors and improprieties occurred during his criminal prosecution and trial. *See, e.g.,* Blackwell Decl. ¶ 4 (asserting that testimony before the SEC did not support the claim that Dr. Blackwell passed along inside information); *id*. ¶¶ 4 & 7 (alleging that Dr. Blackwell's employee and her husband purchased stock for legitimate reasons and not based on inside information); *id*. ¶¶ 5-6 (claiming that the trial judge improperly refused to admit expert testimony); *id*. ¶¶ 8-11 (claiming that the prosecutor improperly withheld information regarding immunity agreements with the Stephans). These allegations do not bear on Dr. Blackwell's request for documents under FOIA. A "[p]laintiff may not trump the agencies' invocation of the FOIA exemptions by arguing that the exempted information should be provided

as exculpatory evidence.  Plaintiff's arguments based on *Brady v. Maryland*[4] and its progeny should

be raised in a collateral proceeding challenging his conviction." *Cucci v. DEA*, 871 F. Supp. 506,

514 (D.D.C. 1994); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) (FOIA

was not intended to supplement or displace rules of discovery).

Dr. Blackwell also speculates that there are documents in existence that would

exonerate him.  He avers, "Because the Stephans had given sworn testimony before the SEC

indicating my innocence, and no contradictory statements were introduced by the Government at

trial, the appropriate inference is that the information obtained by the FBI and provided to the

prosecutor exonerated me and was therefore exculpatory."  *Id.* ¶ 12.  Dr. Blackwell's mere

speculation regarding the existence and discoverability of other documents is insufficient to rebut

Mr. Hardy's good faith declaration.  *See SafeCard*, 926 F.2d at 1200.

## B.  Privacy Act Exemption (j)(2)

Subsection (j)(2) of the Privacy Act exempts from disclosure records maintained by

an agency whose principal function is law enforcement.  5 U.S.C. § 552a(j)(2).  The Privacy Act

permits an agency to promulgate regulations exempting from disclosure:

> records maintained by an agency or component thereof which
> performs as its principal function any activity pertaining to the
> enforcement of criminal laws, including police efforts to prevent,
> control, or reduce crime or to apprehend criminals, and the activities
> of prosecutors, courts, correctional, probation, pardon, or parole
> authorities, and which consist of . . . .  (B) information compiled for
> the purpose of a criminal investigation, including reports of
> informants and investigators, and associated with an identifiable
> individual; or (C) reports identifiable to an individual compiled at any
> stage of the process of enforcement of the criminal laws from arrest
> or indictment through release from supervision.

[4] 383 U.S. 83 (1963).

*Id.* CRS and ELSUR records are expressly made exempt from disclosure under the Privacy Act via 28 C.F.R. § 16.96. Thus, the Privacy Act does not required that the FBI release any of the records that Dr. Blackwell requested. Even though the Privacy Act does not require disclosure, the FBI processed Dr. Blackwell's request under the FOIA.

### C.   FOIA Exemption (b)(2) and Exemption 7(E)

FOIA Subsection (b)(2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This applies to two categories of records: (1) internal agency matters so routine or trivial that they could not be the subject of genuine public interest, *Nat'l Treasury Employees Union v. Customs Serv.*, 802 F.2d 525, 528-30 (D.C. Cir. 1986), and (2) internal matters where disclosure may risk circumvention of statutes and regulations, *Dep't of Air Force v. Rose*, 425 U.S. 352, 365-67 (1976). With regard to the second category, an agency may withhold records that would reveal techniques and procedures for law enforcement investigations, would disclose guidelines for such investigations, or would risk circumvention of the law or impede the effectiveness of law enforcement activity. *Schiller v. NLRB*, 964 F.2d 1205, 1207-08 (D.C. Cir. 1992).

Exemption 7(E), like the second category of records covered by Exemption (b)(2), protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigation . . . or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Pursuant to Exemptions (b)(2) and 7(E), the FBI withheld information regarding procedures used in the forensic examination of a computer by the FBI Computer Analysis and

Response Team as well as fourteen other pages to protect methods of data collection, organization, and presentation in ChoicePoint Reports. Hardy Decl. ¶¶ 45-46 & ¶¶ 70-71. ChoicePoint is a subscription database used by the FBI; it contains information derived from public sources. *Id.* ¶ 46. The manner in which ChoicePoint data is searched, organized, and reported to the FBI is an internal technique, not known to the public. *Id.* Because the information relates solely to the FBI's internal practices, disclosure would not serve a public purpose, and disclosure potentially would aid others in circumventing future FBI investigations, the information is exempt from disclosure under Exemptions (b)(2) and 7(E).

### D. FOIA Exemption (b)(3)

FOIA Exemption (b)(3) applies to information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In order to be a "withholding statute" under Exemption (b)(3), a statute must require that the matters be withheld from the public in a way that leaves no discretion on the issue or the statute must establish particular criteria for withholding or describe particular types of matters to be withheld. *Id.*

Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2520, provides the authority for the interception of wiretaps. The statute also limits the disclosure of intercepted wiretap information. *See id.* §§ 2517(1)-(3). Intercepted wiretap information is exempt from disclosure under Exemption (b)(3). *Lam Lek Chong v. DEA*, 929 F.2d 729, 731 (D.C. Cir. 1991).

Similarly, Federal Rule of Criminal Procedure 6(e)(2) prohibits the disclosure of certain secret aspects of a grand jury investigation, including the identity of witnesses or jurors, the testimony, the strategy and direction of the investigation, and the deliberations of the grand jurors.

-13-

*Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005); *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).  For example, grand jury subpoenas and the dates of their issue tend to show the direction of an investigation and thus are exempt from disclosure under Exemption (b)(3).  *Lopez*, 393 F.3d at 1350.  In order to invoke  Exemption (b)(3), an agency must establish a nexus between the release of the information and the divulgence of a protected aspect the the grand jury investigation.  *Senate of Puerto Rico*, 823 F.2d  at 584.  In the investigative files sought by Dr. Blackwell, "only that information which explicitly discloses matters occurring before a Federal Grand Jury has been withheld pursuant to Exemption (b)(3)."  Hardy Decl. ¶ 48.  The FBI asserts that Exemption (b)(3) exempts from disclosure: (1)  information that would identify grand jury witnesses; (2) information that would identify certain records subpoenaed by the grand jury; and (3) the dates that the grand jury convened.  Because disclosure of this information would divulge protected aspects of the grand jury investigation including the identity of witnesses and the scope, length, direction, and strategy of the  investigation, such protected matters fall within Exemption (b)(3).

### E.  FOIA Exemptions 6 and 7(C)

Invoking FOIA Exemption 6 in conjunction with Exemption 7(C), the FBI redacted information likely to identify the following categories of individuals:  FBI special agents and support personnel, non-FBI federal law enforcement employees, state and local law enforcement personnel, victims, third parties who provided information, and third parties merely mentioned in the files. Hardy Decl. ¶¶ 53-56.

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 522(b)(6).  Exemption 7(C) exempts disclosure of information based

on privacy concerns by permitting an agency to withhold from disclosure information that is

"compiled for law enforcement purposes, but only to the extent that the production of such law

enforcement records or information could reasonably be expected to constitute an unwarranted

invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C) (emphasis added).  If a court determines that

information properly was properly withheld under one exemption, it need not determine whether

another exemption applies to that same information. *Simon v. Dep't of Justice*, 980 F.2d 782, 784-85

(D.C. Cir. 1992).  Thus, in this case the Court only needs to analyze the Exemption 7(C).

Exemption 7(C) protects the identities of suspects, witnesses, and other persons of

investigatory interest who are identified in agency records in connection with alleged criminal

activity. *Computer Prof'ls for Soc. Responsibility v. Secret Service*, 72 F.3d 897, 904 (D.C. Cir.

1996).  Further, law enforcement personnel have a privacy interest in protecting their own  identities

because disclosure could subject them to annoyance, embarrassment, and harassment in the conduct

of their official and private lives. *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999); *Lesar v.

DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980).

Once a privacy interest has been established, it must be balanced against the public

interest, if any, that would be served by disclosure of the information. *Albuquerque Publ'g Co. v.

Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989).   The only relevant public interest for

purposes of Exemption 7(C) is that of shedding light on the agency's performance of its statutory

duties. *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *DOJ

v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  To obtain disclosure, a

FOIA plaintiff "must produce evidence that would warrant a belief by a reasonable person that [an]

-15-

alleged Government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Otherwise, the balancing requirement simply does not come into play. *Id.* at 175.

Dr. Blackwell has not articulated any public interest that would be served by disclosure. Instead, he seeks disclosure in order to challenge his criminal conviction. *See* Blackwell Decl. ¶¶ 12, 16, & 22 (referring to Dr. Blackwell's desire for documents to support his motion filed under 28 U.S.C. § 2255); *see also* Pl.'s Mot., Voss Decl. [Dkt. # 9-3].[5] It is established, however, that the public interest in disclosure "does not include helping an individual obtain information for his personal use" to overturn a conviction. *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 124 S. Ct. 1903 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *accord Thomas v. DOJ*, 531 F. Supp. 2d 102, 108 (D.D.C. 2008); *Cano v. DEA*, Civ. No. 04-935, 2006 WL 1441383, *3 (D.D.C. May 24, 2006).[6] The FBI properly invoked Exemption 7(C).

### F. FOIA  Exemption 7(A)

Exemption 7(A) authorizes an agency to withhold "records or information compiled

---

[5] Mr. Voss was indicted for conspiracy to insider trade, lying to a federal officer, and obstruction of justice. Mr. Voss was tried with Dr. Blackwell, but Mr. Voss was acquitted. Mr. Voss speculates that the Government withheld exculpatory evidence in the trial against Dr. Blackwell. *See, e.g.*, Voss Decl. ¶ 21. Again, mere speculation regarding the existence and discoverability of other documents is insufficient to rebut Mr. Hardy's good faith declaration. *See SafeCard*, 926 F.2d at 1200.

[6] Dr. Blackwell complains that the FBI failed to search for "witnesses" such as the Stephans. Pl.'s Am. Reply [Dkt. # ] at 4. The FBI does not conduct searches on third parties because the information is private information protected by Exemptions 6 and 7(C). *See* 2d Hardy Decl. ¶ 7. The FBI will conduct a search for third party information if provided with proof of death, a privacy waiver, or a strong public interest that outweighs the privacy interest. *Id.* Dr. Blackwell also asserts, without authority, that the privacy interests of certain individuals have been waived because the FBI inadvertently released some names when it produced documents. The FBI's disclosures do not waive the individuals' privacy interests.

for law enforcement purposes, but only to the extent that production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552a(b)(7)(A).  The agency must show that release of the records reasonably could be expected to cause some distinct harm to pending or imminent enforcement proceeding or investigation.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997)*, aff'd without op.*, 172 F.3d 919 (D.C. Cir. 1998).  The FBI need not submit declarations that reveal the exact nature and purpose of its investigations in order to satisfy FOIA — Exemption 7(A) exists precisely to shield that sort of revelation.  *See Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).  Mr. Hardy indicates in his declaration that Exemption 7(A) was applied to protect the name of a pending FBI investigation on one page.  Hardy Decl. ¶ 63.  Release of the name of the investigation could jeopardize it by identifying suspects.  *Id*.  Because Mr. Hardy's Declaration sufficiently establishes how disclosure of the records would interfere with an ongoing law enforcement proceedings, the FBI properly relied on Exemption 7(A).

### G. FOIA  Exemption 7(D)

FOIA Exemption 7(D) allows the withholding of records if their disclosure "could reasonably be expected to disclose the identity of a confidential source — including a state, local, or foreign agency or authority . . . ."  5 U.S.C. § 552(b)(7)(D).  "[I]n the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," the agency may also withhold "information furnished by a confidential source."  *Id*.  The purpose of Exemption 7(D) "is to keep open the Government's channels of confidential information."  *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).

When invoking Exemption 7(D), an agency must demonstrate, through the use of reasonably detailed affidavits, that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or implied promise of confidentiality, and that disclosure could reasonably be expected to disclose the source's identity. *DOJ v. Landano*, 508 U.S. 165, 171-72 (1993). An express assurance of confidentiality is shown by an agency's proffer of "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.* When the agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano,* 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id.*; *Computer Prof'ls for Social Responsibility*, 72 F.3d at 905-06.

Mr. Hardy's affidavit indicates that the FBI utilized the assistance of numerous confidential informants in its investigation. Hardy Decl. ¶ 66. With regard to the pages identified in the *Vaughn* Index, Exemption 7(D) was asserted to protect the identity of a foreign government agency which provided information under an express assurance of confidentiality. Mr. Hardy explains:

Because of the sensitive nature of the information provided by this

foreign government agency, it is natural that it has the expectation of assurance that its identity and the information and assistance that it provided to the FBI would remain expressly confidential.  Disclosure of the identity of this foreign government agency and the information that it provided would have a chilling effect on the FBI's future relationship with this foreign government agency, as such disclosure could result in its refusal to cooperate with the FBI in future investigations.

*Id*. ¶ 68.

### H.  Documents Withheld Under a Sealed Court Order

The FBI also properly withheld documents that are sealed by a February 4, 2005 Order issued by the U.S. District Court for the Southern District of Ohio.  Hardy Decl. ¶ 72.[7]

### I.  Segregability

A district court in a FOIA case has "an affirmative duty to consider the segregability issue *sua sponte*."  *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  This directive stems from the requirement under 5 U.S.C. § 552(b) that any "reasonably segregable" information must be disclosed — that is, information that can be separated from the rest of a document — even if the document is otherwise exempt from disclosure, unless the exempt and non-exempt portions are "inextricably intertwined with exempt portions."  *Id.*; *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency must provide a "detailed justification" and not just "conclusory statements" to demonstrate that it has released all reasonably segregable information.  *Mead Data*, 566 F.2d at 261.  The government must

---

[7] The FBI's motion for summary judgment erroneously referred to a sealed order from the District of New Jersey relating to a drug trafficking conviction.  *See* Defs.' Mot. at 22-23.  The FBI later made it clear that this was a typographical error and that the only sealed order relevant to this case is the one Mr. Hardy addresses in his Declaration.  *See* Defs.' Resp. to Am. Reply [Dkt. # 22] at 2 n.1.

show with reasonable specificity why a document cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  The agency is not required to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.  *Mead Data*, 566 F.2d at 261 n.55.

Here, the Hardy Declaration indicates that the FBI redacted exempt information from the pages released to Dr. Blackwell as indicated above, and released all reasonably segregable non-exempt information.  Hardy Decl. ¶ 73.  Mr. Hardy explains that all documents were processed to achieve maximum disclosure; any further disclosure or attempt to describe information withheld would identify information protected by on of the FOIA exemptions.  *Id*. ¶ 37.  The FBI category-coded the documents identified in the *Vaughn* Index, detailing the nature of the information withheld and which Exemption(s) applied.  *Id*. ¶ 39.  Thus, the FBI met its burden of showing with reasonable specificity why documents could not be further segregated.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Dkt. # 5] will be granted, and Dr. Blackwell's motion for summary judgment [Dkt. # 9] will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date: January 15, 2010                          _____/s/_____

                                                ROSEMARY M. COLLYER
                                                United States District Judge